Case number 1942-64, Andre Hunt v. Frank Sunquist. Arguments not to exceed 15 minutes per side. Ms. Coleman, you may proceed for the appellant. May it please the court. I would like to reserve four minutes for rebuttal. I am Tara Coleman, Baker Hostetler, for the appellant, Mr. Andre Hunt. Mr. Hunt deserves a fair trial, and Black veneer men and women deserve a fair opportunity to sit on juries in this country. That is the purpose of the sentence. In this case, there were 27 members of the veneer, four of whom were Black. All four were stricken by defendants. Three, using peremptory strikes over the Batson objection of plaintiff, which the trial court then overruled with absolutely no explanation as to the plausibility or persuasiveness of the purported reasons for those strikes. This is a violation of Batson, and its case law makes clear that a race-based strike as to only one of any of these three jurors is a structural error warranting a new trial. The issue here is Batson's third step, and there are two errors. First, the trial court erred in failing to find that not a single peremptory strike was motivated in substantial part by race. Second, the trial court failed to complete Batson's third step by failing to analyze the plausibility and persuasiveness of the purported reasons for the three peremptory strikes. First, at the trial, both defendants exercised race-based strikes. Defendant Sundquist struck Black juror 18. This strike was in substantial part based on race, as seen in the desperate questioning by Defendant Sundquist's counsel. At the trial of this case, Defendant Sundquist's counsel asked a total of nine questions to the jury. Six of those nine questions were pointed to Black potential jurors. Of note is that every single juror, Black and White, that were questioned in those nine questions were then either stricken for cause or by peremptory strike. That is important because it shows the intent behind this questioning. The questioning is key because it shows a clear attempt to build a record to strike two African-Americans. This is evidence of a race-based strike. What is our standard of review of the trial judge's decision to deny your Batson challenge? How do we review that on appeal? The standard is clear error, Your Honor. That's a high standard, is it not? Clear error? Your Honor. In clear error, that standard could be met when this court has a firm conviction that a mistake has been made. Had the trial court considered the plausibility and persuasion... Ms. Coleman? Yes, Your Honor. If I may follow up, I'm sorry to interrupt. What if there were two permissible views of the evidence? Do we have to affirm in that situation? If there's one view that's the view you're espousing of the evidence, once we get to it, I anticipate you're espousing based on your brief. The other view is basically the view the district court employed when it went through its analysis or at least whatever analysis it did. But looking at the record as a whole, do we have to affirm under the standard you and Judge Griffin just discussed? No, Your Honor. You do not have to affirm. When you look at the record and you look at the totality of all of the evidence, pretext is found in the case and the judgments of the lower court could be reversed. But let me ask it a different way. Assume the district judge could have reached one of two plausible conclusions, one of which is there's a violation of BATS and one of which there's not. Just a hypothetical question here. Then no matter which conclusion they reach, we have to affirm under the standard of review, correct? Does that make sense? Does my question make sense? I'm not sure I follow. If one of the views is that a BATS error occurred, then no, this court should not affirm. So then isn't that de novo review? In other words, there's two plausible conclusions you could reach, two permissible, however you want to say it. Aren't you asking us to really apply de novo review? We're not asking for you to apply de novo review, Your Honor, because one of the errors, remember, is that the district court failed to fill in the record or discuss the plausibility and persuasiveness of the evidence, of all of the evidence. So we're simply asking the appellate court, as it has done in many cases, to complete BATS' third step, and then pretext is found. It is appropriate for this court to review BATS on itself and be able to find error. As to... To find clear error, just to be more precise, right? We have to find clear error. That is correct, Your Honor. Not just error. I want to put this a little bit different way, in a little bit different context. Your argument almost seems to be that the district court could not choose the racially neutral explanation that was given by the attorneys. We're talking about two different the true explanation. That can't be right, can it? Your Honor, the argument is that at BATS' third step, while there are race-neutral reasons given at the second step, the court, the district court under Torres Ramos, has an affirmative duty to consider all of the evidence and weigh and consider the plausibility and persuasiveness of those race-neutral reasons. That was not done in this case. How do you know that? How do you know that? The judge did not articulate the reasons, but how do you know the judge did not weigh the evidence? I mean, we assume the judges follow the law, do we not? Yes, Your Honor. The presumption we start with is the judge follows the law and the party who is appealing, who is alleging error, has the burden of establishing the error. How do you rebut the presumption that the judge did weigh the evidence? That is correct, Your Honor. The party opposing the strike has the burden of persuasion and that in no way dissolutes the affirmative duty of the trial court to consider plausibility and persuasiveness. We do not believe that happened here because in the record, the court simply takes at face value the race-neutral reasons that were given at the second step with no further analysis. As this court found in O'Donnell, this case is similar, that had the district court actually considered the plausibility and persuasiveness of the race-neutral explanations based on the totality of the circumstances, then if the district court had done so, the court would have found that these purported explanations are pretexts. The pretext is seen as to juror number 18 and the desperate question. Again, six out of the nine questions were geared towards African-Americans. Can I ask you about juror 18 specifically? I thought juror 18 said a couple times he wasn't sure he could be impartial. Is that correct or am I remembering the record incorrectly? So, if you were to review the record as juror number 18, it's at pages 15 through 13. You will see that juror number 18 had two sons, one previously incarcerated, one currently incarcerated. When asked to one of the sons unequivocally, he said that he could be fair and impartial. If you read in context as to the other son, the record shows that he did not have enough facts about his son. Ms. Coleman, I'm sorry to interrupt you, but I thought the judge asked anything about his experience or your experience with him that would prevent you from being fair and impartial in this case, and the answer was, I don't know, Your Honor. Yes. As to that son, Your Honor, if you read this in context, it appears that he simply didn't have enough information about his son's situation to know whether that would impact him. Ms. Coleman, it's asking in this case, would it prevent you from being fair and impartial in this case? I don't know, Your Honor. And most lawyers, in my experience, irrespective of race, gender, or anything else, if the juror says, I don't know if I can be fair and impartial, they would strike them. So why isn't that a permissible reading of the record? Your Honor, I am at time. May I answer your question? Judge Gibbons, may she answer? Yes. Your Honor, as to whether or not, had there been a change of impartiality, the defendants would have moved to strike this juror for cause. When you read this response in context, you see that this juror, essentially, when you compare it to his other son when he's No, Your Honor. The fact that they failed to do so is just further evidence that there was not a true concern of impartiality. Okay. Judge Gibbons, can I ask one additional question? Sure. Sure. Yeah. Ms. Coleman, do you agree that the second issue you raised on the brief, the Rule 50 motion by Ashcroft is moot if you did not succeed on the Batson challenge? Yes, Your Honor. I agree with that. All right. Thank you. All right. We'll hear from Mr. Smith. Thank you, Your Honor, and may it please the court. My name is Kenneth Smith, and I'm the attorney for the appellees Frank Sunquist and Mark Ashcroft. We are asking this court to affirm the decision of the district for both an overruling plaintiff appellant's Batson challenge and in granting appellee Ashcroft's Rule 50 motion. So, regarding the Batson challenge first, at the outset, I'd like to go back to some of the discussions. Mr. Smith, you represent both defendants, don't you? Do you not? I do, Your Honor. Oh, I'm sorry. I thought you just said Ashcroft. I'm sorry. If I did, that was my omission. Okay. Thank you. At the outset, I'd like to highlight the high standards that faced appellant at trial and now on appeal. And at the district court level, the appellant had to show the district judge that there was purposeful discrimination as outlined in Batson v. Kentucky, and there is no guarantee that a party have a jury composed in whole or even in part by his own race. On the appellant level, the appellant must show the district court's finding was clearly erroneous, which the United States Supreme Court in Anderson v. Bessemer City has said means that the reviewing court's indefinite and firm conviction that a mistake has been made. And indeed, when analyzing a Batson decision at the trial court, we offer great deference to the district court's Batson finding. That's because the judge is in the best position to ascertain these issues. So, with that in mind, Ms. Coleman addressed her issues with the judge's consideration of the Batson issue. All right, Mr. Smith, I guess just to specify, you're talking about the third stage of Batson, are you not? That's correct, Your Honor. You concede that the first two steps of Batson have been satisfied here. Is that right? I do, Your Honor, and specifically as it relates to the race-neutral reasons for the second step. Okay, but you also concede the first step, which is the inference of racial discrimination. I would, Your Honor. Okay, thanks. As it relates to the third step, each case that appellant cites in her briefing and as she's discussed and as he's discussed here, there is no magical standard that comes from those cases as to what a district court has to say when issuing a ruling on a Batson charge. In other words, there are no magic words. Here, the trial court listened to three rounds of argument, including permitting the appellant to submit a rebuttal. There are cases in sister circuits that hold that this alone is enough, and in fact, I would be happy to provide this court's decision from earlier this year in Mitchell v. LaRose, upholding that a clear rejection of a Batson motion without explicit findings does not violate the law. Here, our judge was highly involved in the voir dire questioning. He was aware of the jury's racial makeup. He was aware of their responses to his and counsel's questioning, and he heard arguments from both sides. It's why we afford judges this great deference on Batson issues. Now, the cases that appellant cites to are distinguishable. There's little on the record in these cases to indicate a race-neutral reason for why the jurors were ultimately struck. Courts have ambiguous reasons, like in U.S. v. Harris, a case where the prosecution said it seemed like the stricken juror just did not want to be there. In U.S. v. Hill, there was no evidence on the record as to why the judge would accept a rationale for a strike-up. I don't know why I struck them, but it wasn't race. So here, and I'm jumping back to that second prong and analyzing the race-neutral reasons for the striking of the three jurors, as it relates to juror number seven, this case is about an alleged use of force at a county jail. Juror seven's uncle was the warden at the Cuyahoga County Jail in Cleveland, Ohio. Trial counsel for Apelli Sunquist works as the union attorney for the Ohio Patrolman Benevolent Association and described on the record how his position puts him in an adversarial role against jail management, specifically juror seven's uncle. Not only that, juror seven could not affirmatively state that she could be fair and impartial. And that's on page 1,530 of the record. 17 was a nurse in the Cuyahoga County Jail. She had worked there for three years, plus an additional year as a contract nurse in the jail system, and had taken care of inmates after assaults and uses of force. Now, as outlined by trial counsel for Apelli Ashcraft on the record, there was concern that she would bring those experiences at a jail that had frequent newsworthy issues regarding corrections officers using excessive force, that she would bring those issues and experiences with her to this trial. And finally, juror number 18, at which there was already some discussion over, he was stricken for three reasons as outlined by counsel for Apelli Ashcraft. He had two children that were incarcerated, with one that was still incarcerated. He was alleged to have assaulted at least one child. And finally, he was asked on two different occasions whether he could be fair and impartial, once by the district court, and once by counsel for Apelli Sundquist. On both occasions, he said he did not know. Now, again, appellant must show that Apelli's acted with purposeful discrimination here. And there are several ways that attempts to do this in their briefing. First of all, they cite to Flowers v. Mississippi for the standard that there could be a pattern of strikes that make out a case of discriminatory conduct. Yet in the Flowers case, we have a prosecutor over the course of four trials, striking all 36 African American jurors during the course of the trial. The Supreme Court found a relentless and determined effort to rid the jury of black individuals. Now, as this court has held in U.S. v. San Gennaro v. Miranda, U.S. v. San Gennaro Miranda, there is no inference of intentional discrimination. If, without more, there's just a showing that the prosecution used all its peremptory challenges to exclude African Americans. Now, the appellant also is focused on alleged disparate questioning of African American jurors. But in the briefing, you'll see that appellant inconsistently argues both that Apelli's asked too few questions of some of the stricken jurors and then too many questions of others. Now, the appellant also ignores that the court itself asked many questions of the jury pool and the jurors prior to opening for a deer up to counsel. In fact, appellant argues in the briefing that we actually can't rely on the district's court's questioning, but there is no authority to support this proposition. And indeed, if we do accept this proposition is true, then it would be a bizarre proposition that counsel would have to re-ask every question that the district court asks in order to avoid some challenge. There has been mention of the U.S. v. O'Donnell case for appellant's position that there was disparate questioning. But what that case actually held, evidence of discriminatory intent may be found where the reason for striking a juror is based solely on jury questionnaires. Again, here we have jury questionnaires, we have voir dire conducted by the district court, and we have voir dire conducted by counsel. Unlike, in fact, the court questioned each stricken juror. Jurors 7 and 17 both responded to three questions from the court. And juror 7 again explicitly stated she believed she could not be fair and impartial during the questioning. Juror 18 responded to four questions from the court. Now, as it relates to appellant's argument that somehow there was a disparate ratio of questioning of African-American jurors versus white jurors, I would again direct this court's attention to a very recent decision in Mears v. Ottawa County, where it held that a ratio of 9.5 questions to African-Americans versus six questions to white jurors is not violated by Batson. Here, the court asked 42 questions. Counsel for defendant Sundquist asked three questions to juror number 13 about impartiality of white jurors. In sum, the appellate total asked nine questions to the white jurors. So, we don't even have that ratio that we had in Mears v. Ottawa County. Finally, appellant tries to, in the briefing, compare jurors to find evidence of purposeful discrimination. So, you'll see that appellant tries to compare juror number seven, whose uncle was the warden at Cuyahoga County Jail, to other jurors who had family members in law enforcement. But again, juror seven was challenged due to her relationship with a warden at a newsworthy county jail who had an adversarial relationship to appellee Sundquist's counsel. Each of the compared jurors stated they could be impartial, unlike juror seven. Moreover, jurors 16 and 26 were also stricken, just like number seven, and they had family that was in law enforcement and were white. Appellant then tries to compare juror 17, the Cuyahoga County Jail nurse, to juror 22. Now, appellant, in their replies, flat out misconstruing the evidence when they say that this juror number 22 was a nurse at a juvenile facility. She was not. She was an intern for six months and then for a total of two years, so another year and a half, she worked as a therapist at a juvenile in altercations, like juror number 17 did, which again is at the heart of this case. Finally, appellant tries to compare juror 18 to other jurors that had family members incarcerated. However, the key difference, again, is that juror 18 continually said, I do not know if I can be fair and impartial. And during court questioning on whether the jurors who had family members in the prison system could be fair and impartial, juror 18 was the only one that waffled on that if they could be fair and impartial. Mr. Smith, is someone's inability to be fair and impartial grounds for disqualification based upon cause? Yes, your honor, I would say it was. Okay, and if it is grounds for under Batson to use the same, a rationale which would automatically exclude a juror for cause would be sufficient race neutral reasons under Batson, would it not? I mean, if the juror does not qualify for cause, the juror must also be excludable excludable under a periphery check, I assume. That would be correct. That would be correct, your honor. The one way that this juror did differ from some of the jurors that were stricken for cause is that instead of a very solid and affirmative, I can't be fair and impartial, or I can't pay attention to this. But the inability to say you can be fair and impartial, I mean, I would think that would be grounds for cause. I'd be shocked if it's not. I think it would be, your honor. Do you have any authority to that effect? I know that's not really what you argued, but. Sure. Do you have any authority on that? I don't, your honor, and the authority that I'm familiar with on the issue really seems to, for purposes of Batson, the authority doesn't seem to parse out whether it's for cause or a periphery check. All right. Thank you. Thank you, Mr. Smith. Can I ask you the flip side of that question, which is what your friend on the other side was bringing up, which is if this juror was, if there was sufficient evidence from which you could have challenged for cause, why didn't you? And is that anything we should use against your clients? Your honor, again, all that Batson requires is that there is a race-neutral reason for issuing the strikes. Sure, but, so let me walk you through a scenario. If that's the real basis, if the real basis is they can't be fair and impartial or they're equivocating as when they can be, most district judges would strike them for cause. We're trying to figure out the real reason. Sure. Your honor, it relates to juror, and again, I'm getting specific in this case, but as it relates to juror 18, it was not just the fact that he waffled on whether or not he could be fair and impartial. And you'll see from the transcript that there are, questioning is designed to really get behind the reasons for his responses. And juror 18 was also stricken for a couple other reasons. Number one, again, this is a case about an alleged assault. He had a son that, or he was accused himself of assaulting a child that was in his care. Moreover, he did have family members that were in, currently incarcerated. And as described earlier, several other of those jurors that had family members that were involved in the prison system or that had been in the prison system themselves were also stricken. Yeah. Well, he could have been fair and impartial. Is there a negative inference to be, or an inference to be drawn about counsel's motivations for not asking that he be excused for cause? I wouldn't believe so, your honor. In fact, I think that that's, again, we're trying to transport ourselves into the minds of trial counsel, who at the time had a couple other of four cause challenges. I think here, this juror in particular was really waffling and going back and forth. It was a little bit different from the other jurors that were stricken for cause, given their very, very firm statements that either they could not pay attention during the trial because they had family members with medical issues or that they could not be fair and impartial. So, I believe that those circumstances, if you look at the frame, see why he was chosen to be a peremptory challenge as opposed to a four cause challenge. And as far as I know, all the authority in court says that, or there is no authority that I'm aware of that says that counsel should use a four cause challenge versus a peremptory challenge when a peremptory challenge is to try to counsel a trial. So, that about concludes my time. Again, I would ask that this court affirm the decision of the district court in all respects. Thank you. Ms. Comey, you have some rebuttal time. Yes, thank you, your honor. I want to remind the court that a race-based strike does not pass to any one of these jurors. To the point Mr. Smith made, it is not true that the two arguments for desperate questioning are inconsistent. The case law shows there can be too many questions targeted at African Americans. And the second point to that, when there is no distinction there, is that there's no questions on the specific purported reasons for the strikes. It's not the argument that because there were no questions asked at all, that is evidence of the point is there are no questions asked to the reasoning purported to be the race-neutral reason. There were no questions asked at all of jurors number 17 and juror number 7. Juror number 17 was stricken for two reasons. One, because the counsel said they did not want her to bring her notions about her job to the jury. There was absolutely no by the trial court to bring out that this juror had preconceived notions. And again, absolutely no questioning at all by the defendant as to any preconceived notions. This reason is simply afterthought indicating pretext. Again, as in O'Donnell, Drecke, and Mahone, if there was a true concern that this juror would bring preconceived notions, you would expect questions. Juror number 7, again, asked no questions at all. This juror was stricken because defendants say she was quote, quote, equivocating as to whether she could be fair and impartial. And that counsel's involvement in the Ohio Patrolman's Benevolent Association representing corrections officers. Now, there's no questioning as to anything to deal with the OPBA. That is, again, it seems to be simply afterthought. As to 1519 of the record, unequivocally states, as to her relationship with her uncle, that's at the issue of the purported race neutral reason, that she can be fair and impartial in this case. She is subsequently asked, as to the specific charge of concealment, as to the charge of concealment, can you be fair and impartial? And she responds, that's not fair. If you read this together, at best, there's just an ambiguity as to being fair and impartial. And again, as in O'Donnell, Drecke, and Mahone, if they were truly concerned about this ambiguity, you would expect that there would be questioning to clear up any misunderstanding before getting to the point of a strike. As in Drecke, failure to ask follow-up questions undermines the persuasiveness of the claimed concern. Given all of the evidence geared towards pretext in this case, we can see that at least one of these peremptory strikes was a race-based strike. And that is a violation of baton, which this court has held is a structural error, warranting a new trial. And your honors, for that, we ask that the judgments of the lower court be reversed and a new trial granted in this case. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you.